## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**BARNACLE BILL'S OYSTER BAR AND SEAFOOD RESTAURANT, INC.,**

        **Plaintiff,**

    **v.**

**SYSCO CORPORATION,**

        **Defendant.**

**Civil Action No. _____**

## DEFENDANT SYSCO CORPORATION'S NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, Defendant Sysco Corporation ("Sysco") removes this action from the Second Judicial Circuit Court, Leon County ("Leon County Circuit Court"), showing as grounds therefor:

### Compliance with the Procedural Requirements for Removal

1.      Sysco has been named as the sole Defendant in the action styled *Barnacle Bill's Oyster Bar and Seafood Restaurant, Inc. v. Sysco Corporation*, pending as Case Number 2017 CA 000303 in the Circuit Court of Leon County (the "State Court Action").

2.      Plaintiff Barnacle Bill's Oyster Bar and Seafood Restaurant, Inc. ("Plaintiff") filed the Complaint in the State Court Action (the "Complaint") on February 9, 2017.

3.      Plaintiff served the Complaint on Sysco on February 14, 2017.

4.      In accordance with 28 U.S.C. § 1446(b) and Fed. R. Civ. P. 6(a), Sysco files this Notice of Removal within thirty (30) days of service of the Complaint.

5.      In accordance with 28 U.S.C. § 1446(a), Sysco attaches copies of all process, pleadings, and orders served on it in the State Court Action as **Composite Exhibit "A."**

6. Promptly after filing this Notice of Removal, Sysco will give written notice of the removal to Plaintiff through its attorneys of record in the State Court Action, as well as to the Clerk of the Court in the State Court action, as required by 28 U.S.C. § 1446(d).

7. This case properly may be removed to this Division of this United States District Court under 28 U.S.C. §§ 1332, 1441(a), and 1453. The Leon County Circuit is located within the jurisdiction of the United States District Court for the Northern District of Florida, Tallahassee Division.

8. As set forth below, removal is proper under 28 U.S.C. §§ 1332(d) and 1453 because this case is (a) a class action, (b) with proposed classes containing 100 or more members in the aggregate, (c) in which the Plaintiff is a citizen of a state that is different from Sysco, and (d) the matter in controversy exceeds $5,000,000.

**Citizenship of the Parties**

9. According to the Complaint, Plaintiff is a Florida corporation with its principal place of business in Tallahassee, Florida. Compl. ¶ 5.

10. Sysco is a Delaware company with its principal place of business in Houston, Texas. *Id.* ¶ 6.

11. The Complaint seeks relief on behalf of the following putative class:

> All entities who reside in Florida who paid Sysco a "Fuel Surcharge" from four years before filing of this action to the date of class notice.

*Id.* ¶ 7.

12. Thus, there is diversity of citizenship between the named Plaintiff and members of the putative class (Florida), on the one hand, and the named Defendant (Delaware and Texas), on the other hand. *See Eisenberg v. McCulley*, No. 15-10323, 2015 WL 3619751, *1 (11th Cir. June 11, 2015) (observing that "a corporation is 'deemed to be a citizen of every

State and foreign state by which it has been incorporated and . . . where it has its principal place of business.'").

## Removal Pursuant to 28 U.S.C. §§ 1332(d) and 1453

13.     Under the Class Action Fairness Act of 2005 ("CAFA"), a "class action" may be removed where "any member of a class of plaintiffs is a citizen of a State different from any defendant" and "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. §§ 1332(d)(2) and 1453 . For purposes of the $5,000,000 jurisdictional requirement, "the claims of the individual class members shall be aggregated." 28 U.S.C. § 1332(d)(6).

14.     Where a complaint does not specify the amount of damages sought—as in Plaintiff's Complaint—and where the amount in controversy is in dispute, the removing defendant must prove by a preponderance of the evidence that the jurisdictional amount-in-controversy is satisfied.  *McDaniel v. Fifth Third Bank*, 568 Fed. Appx. 729, 730 (11th Cir. 2014) ("Where the plaintiff does not plead a specific amount of damages, 'the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement.'"); *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 912-13 (11th Cir. 2014).[1]

15.     In support of an argument that the amount-in-controversy threshold is satisfied, a removing defendant may submit specific factual details—including declarations or other documentation—to support its contentions.  *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744,

---

[1] In *Dudley*, citing precedent from the United States Supreme Court, the Eleventh Circuit Court of Appeals explained, "'when a defendant seeks federal-court adjudication, the defendant's amount in controversy allegation should be accepted when not contested by the plaintiff or questioned by the court.'  In other words, all that is required is a 'short and plain statement of the grounds for removal,' including 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'  That is the end of the matter, unless 'the plaintiff contests, or the court questions, the defendant's allegation.'"  *Dudley*, 778 F.3d 909, 912 (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553-554 (2014)).

755 (11th Cir. 2010); *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014) (In determining the existence of adequate damages to support CAFA jurisdiction, "[a] court may rely on evidence put forward by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence, to determine whether the defendant has carried its burden.").

16.     Plaintiff purports to bring "this action as a class action under Florida law[.]" Compl. ¶ 7. Florida's Rule of Civil Procedure pertaining to class actions, Rule 1.220, is similar to Federal Rule of Civil Procedure 23. The State Court Action thus constitutes a "class action." 28 U.S.C. § 1332(d)(1).   *Lance v. Wade*, 457 So. 2d 1008, 1011 n.2 (Fla. 1984) (Citing the substantial revisions made to Florida Rule of Civil Procedure 1.220 in 1980 and observing that "[t]he current class action rule is based on the federal class action rule . . . . ").

17.     At least minimum diversity exists because the named Plaintiff is a citizen of a state different than Sysco. 28 U.S.C. § 1332(d)(2).

18.     The amount in controversy exceeds $5,000,000. The Complaint alleges Plaintiff and members of the putative class paid a "Fuel Surcharge" which bore no relation to Sysco's actual fuel costs. *See e.g.,* Compl. ¶ 2 ("The Fuel Surcharge bears absolutely no relation to Sysco's actual increased fuel costs (or its actual fuel costs) and Sysco does not use the proceeds from the Fuel Surcharge to offset its increased fuel costs (or its actual fuel costs);" *id.* ¶ 29 (The Fuel Surcharge "is unrelated to Sysco's actual or increased fuel costs, and certainly not charged to defray those increased costs."). Instead, Plaintiff alleges that the Fuel Surcharge is a hidden rate increase designed to generate extra profit. *See, e.g., id.* ¶ 2 ("Sysco uses the Fuel Surcharge simply to generate extra profit at its customers' expense, all the while deceiving customers into believing that the fee is a legitimate charge directly related to actual increased fuel costs it

incurs[.]"); *id.* ¶ 18 (alleging that the Fuel Surcharge "is recognized as revenue and contributes directly to Sysco's profit."); *id* ¶ 19 (alleging that Sysco "devised, implemented, and set the amount of the 'Fuel Surcharge' simply to increase their profits[.]"); *id* ¶ 20 (alleging that the Fuel Surcharge enables Sysco to recover "the same alleged cost twice from its consumers," and that such practice constitutes "double dipping." ). Thus, Plaintiffs challenge the entire amount of the Fuel Surcharge.

19.     Based on these allegations, Plaintiff purports to allege (1) violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") and (2) unjust enrichment. *Id.* ¶¶ 23-34.

20.     Sysco disputes Plaintiff's characterization of the Fuel Surcharge, denies Plaintiff's allegations and claims, denies class certification is appropriate, denies liability and denies Plaintiff or any member of the putative class is entitled to any damages whatsoever. Without prejudice to Sysco's continued reservation of all its defenses to liability, damages and class certification in this action, Sysco has calculated (a) the amount of Fuel Surcharges, (b) paid to Sysco affiliates by all entities residing in Florida, (c) between July 2014 and February 2017. As detailed in the Declaration of Gregory Lee, Chief Financial Officer of Sysco Jacksonville, Inc., attached as **Composite Exhibit "B,"** the total amount of these charges is **at least $14,228,888**.[2]

21.     Calculating attorneys' fees would result in a fee award if the Plaintiff were successful that would add even more to the total amount in controversy.

---

[2] As further explained in the Declaration of Gregory Lee, the $14,228,888 figure reflects Fuel Surcharges paid during the time period of July 2014 to February 2017 by entities residing in Florida to the Sysco affiliates that service Florida customers—Sysco Jacksonville, Inc.; Sysco Central Florida, Inc.; Sysco West Coast Florida, Inc.; Sysco Southeast Florida, Inc.; and Sysco South Florida.  As further detailed in the Declaration of Gregory Lee, another Sysco affiliate, Sysco Gulf Coast, Inc., services customers in both Florida and Alabama; during the time period of July 2014 to February 2017, Florida and Alabama customers paid Sysco Gulf Coast $2,041,189 in Fuel Surcharges.  The amount paid in Fuel Surcharges by Florida customers has not yet been segregated from this total dollar amount.  The $2,041,189 figure is the aggregate of Fuel Surcharges paid to Sysco Gulf Coast by both Florida and Alabama customers.  Sysco anticipates the total amount in controversy to exceed $14,228,888 once Sysco Gulf Coast determines what portion of the $2,041,189 figure was paid to Sysco Gulf Coast by entities residing in Florida.

22.     Plaintiff also seeks attorneys' fees, which are recoverable under FDUTPA. Compl. ¶ 35.   Because FDUTPA provides for attorney's fees, these amounts may be included for purposes of calculating the amount in controversy under CAFA. *See Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 808 n.4 (11th Cir. 2003) ("The general rule is that attorneys' fees do not count towards the amount in controversy unless they are allowed for by statute or contract."); *Lee-Bolton v. Koppers Inc.*, 848 F.Supp.2d 1342, 1356 (N.D. Fla. 2011) (same).

23.     CAFA's expanded jurisdiction only applies to class actions comprised of 100 or more members in the aggregate. Plaintiff alleges that the "number of putative members of each class exceeds 60 entities" and "is so numerous that separate joinder of each member is impracticable." Compl. ¶¶ 10, 12. As set forth in the Declaration of Gregory Lee, Sysco affiliates have well over 100 customers that are Florida residents who paid the disputed "Fuel Surcharge" during the time period at issue.  28 U.S.C. § 1332(d)(5)(B).  *See e.g., Miedema v. Maytag Corp.*, 450 F.3d 1322, 1327 n.4 (11th Cir. 2006) (finding that the notice of removal—which stated that the putative class members numbered in the thousands—satisfied 28 U.S.C. § 1332(d)(5)(B)).

24.     None of CAFA's discretionary or mandatory exceptions to jurisdiction apply here because, as discussed above, Sysco is a citizen of Delaware and Texas. *See* 28 U.S.C. §§ 1332(d)(3)-(d)(4).

25.     Accordingly, because the State Court Action is a putative class action with 100 or more class members, is between citizens of different states, and places more than $5,000,000 in controversy, removal is proper pursuant to 28 U.S.C. §§ 1332(d) and 1453.

WHEREFORE, Defendant Sysco hereby removes the State Court Action from the Leon County Circuit Court.

Respectfully submitted, March 14, 2017.

/s/ T. Todd Pittenger
T. Todd Pittenger, Esq.
Florida Bar No.: 0768936
email:  todd.pittenger@akerman.com
email:  barbara.morrison@akerman.com
**AKERMAN LLP**
420 South Orange Avenue
Suite 1200
Orlando, FL  32801-4904
Phone:  (407) 423-4000
Fax:  (407) 843-6610
J. Riley Davis, Esq.
Florida Bar No.:  118121
Email:  riley.davis@akerman.com
**AKERMAN LLP**
Suite 1200
106 East College Avenue
Tallahassee, FL  32301
Phone:  (850) 224-9634
Fax:  (850) 222-0103
*Attorneys for the Defendant, SYSCO*
*CORPORATION*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of March, 2017, I E-filed the foregoing document by using the Court's E-Portal filing system which will serve a copy on counsel of record; and, I further certify that I furnished a copy of the foregoing document by *Electronic Mail* to: Ryan B. Hobbs, Esq., (rhobbs@tallahasseeattorneys.com jeanetta@tallahasseeattorneys.com), Brooks, LeBoeuf, Bennett, Foster & Gwartney, PA, 909 East Park Avenue, Tallahassee, Florida 32301.

/s/ T. Todd Pittenger
T. Todd Pittenger

# COMPOSITE EXHIBIT "A"

**Copies of All Process, Pleadings, and
Orders in the State Court Action**

# FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form shall be filed by the plaintiff or petitioner for the use of the Clerk of the Court for the purpose of reporting judicial workload data pursuant to Florida Statutes section 25.075.

## I.     CASE STYLE

IN THE CIRCUIT COURT OF THE <u>SECOND</u>  JUDICIAL CIRCUIT,
IN AND FOR <u>LEON</u>  COUNTY, FLORIDA

Case No.: <u>2017 CA 000303</u>
Judge: _____

<u>BARNACLE BILLS OYSTER BAR AND SEAFOOD RESTAURANT</u>
 Plaintiff
     vs.
<u>SYSCO CORPORATION</u>
Defendant

## II.     TYPE OF CASE

- ☐ Condominium
- ☐ Contracts and indebtedness
- ☐ Eminent domain
- ☐ Auto negligence
- ☐ Negligence – other
  - ☐ Business governance
  - ☐ Business torts
  - ☐ Environmental/Toxic tort
  - ☐ Third party indemnification
  - ☐ Construction defect
  - ☐ Mass tort
  - ☐ Negligent security
  - ☐ Nursing home negligence
  - ☐ Premises liability – commercial
  - ☐ Premises liability – residential
- ☐ Products liability
- ☐ Real Property/Mortgage foreclosure
  - ☐ Commercial foreclosure $0 - $50,000
  - ☐ Commercial foreclosure $50,001 - $249,999
  - ☐ Commercial foreclosure $250,000 or more
  - ☐ Homestead residential foreclosure $0 – 50,000
  - ☐ Homestead residential foreclosure $50,001 - $249,999
  - ☐ Homestead residential foreclosure $250,000 or more
  - ☐ Non-homestead residential foreclosure $0 - $50,000
  - ☐ Non-homestead residential foreclosure $50,001 - $249,999
  - ☐ Non-homestead residential foreclosure $250,00 or more

- ☐ Other real property actions $0 - $50,000
- ☐ Other real property actions $50,001 - $249,999
- ☐ Other real property actions $250,000 or more

- ☐ Professional malpractice
  - ☐ Malpractice – business
  - ☐ Malpractice – medical
  - ☐ Malpractice – other professional
- ☒ Other
  - ☐ Antitrust/Trade Regulation
  - ☒ Business Transaction
  - ☐ Circuit Civil - Not Applicable
  - ☐ Constitutional challenge-statute or ordinance
  - ☐ Constitutional challenge-proposed amendment
  - ☐ Corporate Trusts
  - ☐ Discrimination-employment or other
  - ☐ Insurance claims
  - ☐ Intellectual property
  - ☐ Libel/Slander
  - ☐ Shareholder derivative action
  - ☐ Securities litigation
  - ☐ Trade secrets
  - ☐ Trust litigation

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

III.     **REMEDIES SOUGHT** (check all that apply):
- ☒  Monetary;
- ☐  Non-monetary
- ☐  Non-monetary declaratory or injunctive relief;
- ☐  Punitive

IV.     **NUMBER OF CAUSES OF ACTION: (     )**
(Specify)

<u>2</u>

V.     **IS THIS CASE A CLASS ACTION LAWSUIT?**
- ☒  Yes
- ☐  No

VI.     **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
- ☒  No
- ☐  Yes – If "yes" list all related cases by name, case number and court:

VII.     **IS JURY TRIAL DEMANDED IN COMPLAINT?**
- ☒  Yes
- ☐  No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature <u>s/ Ryan Blake Hobbs</u>        FL Bar No.: <u>44179</u>
           Attorney or party                                                       (Bar number, if attorney)

<u>Ryan Blake Hobbs</u>      <u>02/09/2017</u>
           (Type or print name)                                      Date

**IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT**
**IN AND FOR LEON COUNTY, FLORIDA**
**CIVIL DIVISION**

**BARNACLE BILL'S OYSTER**
**BAR AND SEAFOOD**
**RESTAURANT, INC.,**

CASE NO.: ___2017 CA 000303___

DIVISION: _____

     **Plaintiff,**

**v.**

**SYSCO CORPORATION,**

     **CLASS REPRESENTATION**

     **Defendant.**

_____/

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, Barnacle Bill's Oyster Bar and Seafood Restaurant,, Inc. ("Barnacle Bills"), individually and on behalf of a class of all Florida persons or entities who are similarly situated, and files this Class Action Complaint against the Defendant Sysco (hereinafter collectively referred to as "Sysco" or "Defendants").

## NATURE OF THE CASE

1.     Sysco is a multinational food distribution company headquartered in Houston, Texas.  Sysco markets, sells, and distributes food products to restaurants, healthcare and educational facilities, lodging establishments and other customers like Barnacle Bills.  In addition to the amount Sysco charges its customers for the sale and delivery of food products, Sysco charges its Florida customers a fee it calls a "Fuel Surcharge."   The term "Fuel Surcharge" has an understood meaning and in using this term, Sysco represents that it charges the Fuel Surcharge to recover the increased fuel costs it incurs in delivering products to its customers.  Sysco represents that the Fuel Surcharge varies in accordance with Sysco's increased fuel costs and that the revenue from the Fuel Surcharge is used to offset those increased costs.

1

2.     Sysco's representations, omissions, and practices in charging the Fuel Surcharge are deceptive and unfair.  The Fuel Surcharge bears absolutely no relation to Sysco's actual increased fuel costs (or its actual fuel costs) and Sysco does not use the proceeds from the Fuel Surcharge to offset its increased fuel costs (or its actual fuel costs).  The amount of the Fuel Surcharge generally does not change, despite decreases in Sysco's fuel costs.  Further, Sysco includes any increases in fuel costs it might incur in delivering products in the standard prices it charges customers.  Sysco uses the Fuel Surcharge simply to generate extra profit at its customers' expense, all the while deceiving customers into believing that the fee is a legitimate charge directly related to actual increased fuel costs it incurs, which it falsely claims it cannot control.

3.     Sysco's conduct constitutes a violation of the Florida Deceptive and Unfair Trade Practices Act.  Further, this case presents a prototypical situation for class treatment.  Sysco's conduct—including all relevant practices, deception, representations, and omissions—is uniform among all customers.  The application of Florida law to a shared course of conduct will determine liability for the class as a whole, ensuring that the rights of thousands of small businesses and individuals are vindicated through the efficiency of a single trial.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action and venue is proper in this Court.  Sysco does business in Leon County, Florida.  Sysco has received and continues to receive substantial revenue and profits from the improper Fuel Surcharges in Leon County, Florida.  Plaintiff's principal place of business was in Leon County, Florida.  The conduct giving rise to Plaintiff's claims and to the claims of each putative class member occurred in Florida.  Plaintiff's claims arise solely under Florida law and Plaintiff makes no claims under Federal law.

## PARTIES

5.      Plaintiff Barnacle Bills Oyster Bar and Seafood Restaurant, Inc. was a Florida corporation with its principal place of business in Tallahassee, Leon County, Florida.  Barnacle Bills was invoiced for and paid a "Fuel Surcharge" on multiple occasions and as recently as July, 2016.

6.      Defendant Sysco is a Delaware entity with has its principal place of business in Houston, Texas.  Defendants' appointed agent for service of process is Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301-2525. Defendant Sysco received all of the Fuel Surcharges at issue in this matter and are responsible, either directly or indirectly, for the conduct at issue in this matter.

## CLASS REPRESENTATION ALLEGATIONS

7.      Plaintiff brings this action as a class action under Florida law and proposes the following class:

> All entities who reside in Florida who paid Sysco a "Fuel Surcharge" from four
> years before filing of this action to the date of class notice.

8.      Excluded from the proposed class are members of the judiciary, entities currently in bankruptcy, entities whose obligations have been discharged in bankruptcy, and governmental entities.

9.      Plaintiff maintains the right to create additional subclasses or classes, if necessary, and to revise these definitions to maintain a cohesive class which does not require individual inquiry to determine liability.

10.      The exact number of class members is unknown to Plaintiff at this time, but such information can be ascertained through appropriate discovery, specifically from records maintained by Sysco its agents.  Upon information and belief, the number of putative members of

each class exceeds 60 entities.

**EXISTENCE AND PREDOMINANCE OF**
**COMMON QUESTIONS OF LAW AND FACT**

11.     There are common questions of law and fact common and of general interest to the

class.  These common questions of law and fact predominate over any questions affecting only

individual members of the class.  Such common questions include, but are not limited to, the

following:

a.   Whether Sysco charges excessive amounts for its Fuel Surcharge.

b.   Whether the Fuel Surcharge is directly related to Sysco's increased cost of fuel or actual

cost of fuel.

c.   Whether Sysco uses the Fuel Surcharge to offset its increased fuel costs.

d.   Whether the Fuel Surcharge fluctuates as Sysco's actual fuel costs fluctuate.

e.   Whether Sysco's use of the term "Fuel Surcharge" is deceptive.

g.    Whether Sysco has misrepresented facts about the Fuel Surcharge.

h.   Whether Sysco has omitted material facts about the Fuel Surcharge.

i.   Whether the Fuel Surcharge bears any relation to Defendants' increased costs of fuel

or its actual cost of fuel.

j.   Whether Sysco's representations and omissions regarding the Fuel Surcharge

constitute a deceptive trade practice.

k.   Whether Sysco has been unjustly enriched by charging the Fuel Surcharge.

l.   Whether the term "Fuel Surcharge" is likely to mislead a reasonable person.

m.  Whether the same law applies to all class members' claims.

n.   Whether Plaintiff and class members are entitled to class relief as requested herein.

o.   Whether Sysco is recovering for the same alleged cost twice, i.e. once in the actual rate and then again in the actual surcharge or fee.

p.   Whether amounts of the Fuel Surcharges charged to Sysco customers is "unfair" under FDUTPA.

## TYPICALITY AND NUMEROSITY

12.   The claims of the named Plaintiff are typical of the claims of the class.   Upon information and belief, the total number of members of each putative class exceeds 60 members and is so numerous that separate joinder of each member is impracticable.

## ADEQUATE REPRESENTATION

13.   Plaintiff will fairly and adequately protect the interests of the members of the class and have no interest antagonistic to those of other class members.   Plaintiff has retained class counsel competent to prosecute class actions and such class counsel is financially able to represent the classes.

## SUPERIORITY

14.   The class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impracticable.   The interests of judicial economy favor adjudicating the claims for the Plaintiff class rather than on an individual basis.   The class action mechanism provides the benefit of unitary adjudication, economies of scale and comprehensive supervision by a single court.

15.   Questions of law and fact predominate over any questions affecting only individual members.

## FACTUAL ALLEGATIONS

16.   Barnacle Bill's was a restaurant in Tallahassee, Florida. Sysco is a multinational

food distribution company headquartered in Houston, Texas with over $50 billion a year in annual revenue. As with all its customers, Sysco marketed, sold, and delivered food products to Barnacle Bill's in exchange for a per item cost. But in addition to this amount, Sysco also charged Barnacle Bills the fee that is the subject of this lawsuit.

17.     Sysco calls the subject fee a "Fuel Surcharge."  Sysco charges this fee purportedly to recover the increased fuel costs it incurs in delivering products to its customers.  Sysco represents that the Fuel Surcharge is directly related to its increased cost of fuel, that this fee fluctuates as Sysco's fuel cost fluctuates, and that this fee is used to offset those increased fuel costs.   By using the term "Fuel Surcharge"—a term which Sysco has uniformly used on every invoice received by every Class Member charged this fee—Sysco represents that this fee is directly related to its increased fuel costs and that this fee will be used to defray such costs.

18.     In actuality, the "Fuel Surcharge" is unrelated to Sysco's actual or increased fuel costs, and certainly not charged to defray those increased costs. The Fuel Surcharge does not vary or fluctuate in accordance with Sysco's actual increased fuel costs and the method by which Sysco determines the fuel surcharge has no relation to its increased fuel costs or any changes in those costs.  Sysco has done no legitimate analysis to determine the proper amount of the Fuel Surcharge in connection to its increased fuel costs.  Sysco does not apply the money received from the Fuel Surcharge to offset its increased fuel costs; rather, it is recognized as revenue and contributes directly to Sysco's profit.   Additionally, the increased fuel costs Sysco purportedly recovers through the Fuel Surcharge are already fully through the prices it charges for sale and delivery of products.  These prices includes the individual component costs of Sysco's business, including— specifically—the costs of fuel and other overhead.

19.     Sysco also has omitted material facts regarding the Fuel Surcharge.  For example,

Sysco does not disclose that the Fuel Surcharge is not related to Sysco's increased fuel or actual fuel costs, that the Fuel Surcharge is not applied to Sysco's fuel costs, that Sysco's actual cost of fuel is not a factor in the amount of the Fuel Surcharge and that the Fuel Surcharge is recognized as profit.   Sysco does not disclose its actual fuel costs to customers nor does it disclose the methodology, to the extent there is one, used to determine the amount of the Fuel Surcharge.   In truth, Sysco devised, implemented, and set the amount of the "Fuel Surcharge" simply to increase their profits without any intent of recovering the increased fuel costs they incur in servicing customers.

20.     Sysco, at some time in the past, did not charge Fuel Surcharges to its customers. Any purported fuel costs or increased fuel costs were recovered in the per item price for the sale and delivery of products, the same as other overhead costs.   Sysco, however, figured out that it could substantially increase revenue by charging this deceptive fee.    Sysco recovers the same alleged costs twice from its customers.   Such practice constitutes "double-dipping."

21.     Sysco knows when it enters into an agreement with a customer that the customer will pay substantially more than the agreed upon service rate.   Sysco does not adequately disclose this fact to its customers.   Sysco never discloses that the amount of Fuel Surcharges charged to customers substantially exceeds its actual increased fuel costs, if any.

22.     Sysco has consistently and continually misrepresented the nature and purpose of the Fuel Surcharge.   It does so to mislead its customers into believing that this is a legitimate fee which are directly related to increased fuel costs Sysco incurs in providing food delivery services. This practice was designed by Sysco to deceive its customers, and is likely to deceive those customers acting reasonably under the circumstances.   Sysco's misrepresentations, omissions, and deceptive practices did in fact deceive Plaintiff and Sysco's other Florida customers to their

detriment in that each paid a Fuel Surcharge.

### FIRST CAUSE OF ACTION

### VIOLATION OF FLORIDA'S DECEPTIVE AND
### UNFAIR TRADE PRACTICES ACT

23.     All allegations and paragraphs in this complaint are incorporated by reference.

24.     Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, et seq. ("FDUTPA"), prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

25.     The stated purpose of FDUTPA is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202.

26.     Plaintiff and each member of the putative class, as "consumers" under FDUTPA (Fla. Stat. § 501.203(7)), have been harmed by Sysco's unconscionable, deceptive, and unfair acts and practices in the charging of the Fuel Surcharge.  Sysco characterizes the Fuel Surcharge as a legitimate charge which is designed to recover the increased fuel costs it incurs in providing food delivery services to its customers, and which is used to offset such costs    In truth, the Fuel Surcharge does not bear any relation to any increased costs nor any actual costs incurred by Sysco and it is not used to offset any actual or increased costs.  Further, Sysco already recovers any fuel costs, including increased fuel costs, it might incur through the per item prices Sysco charges for sale and delivery of products ("double-dipping").

27.     Sysco characterizes the Fuel Surcharge as a legitimate charge, but in reality it is nothing more than a profit enhances for Sysco and are otherwise improper.  Sysco has deceived and misled Plaintiff and putative class members in that the Fuel Surcharge serves no purpose other

than to increase Sysco's profits and because the fee is excessive and bears no relation to any actual cost incurred by Sysco.   Sysco has performed no cost analysis to determine whether the Fuel Surcharge bears any relation to the costs incurred by Sysco.   Sysco's misrepresentations, omissions, and deceptive practices as set out in this Class Action Complaint are likely to mislead reasonable customers under the circumstances.

28.    Specifically, Sysco's deceptive practices directed toward Plaintiff and putative class members include:

a.  Sysco's failure to disclose the excessive amount it charges for its Fuel Surcharge;

b.  Sysco's representation that the Fuel Surcharge is directly related to its increased cost of fuel or actual cost of fuel;

c.  Sysco's representation that the Fuel Surcharge is used to offset its increased fuel costs;

d.  Sysco's failure to disclose that the Fuel Surcharge does not fluctuate as Sysco's actual fuel costs fluctuate;

e.  The representation that the Fuel Surcharge is actually a fuel surcharge;

f.  The failure to disclose that the Fuel Surcharge has nothing to do with Sysco's actual cost of fuel;

g.  The representation that the Fuel Surcharge is related to Sysco's increased costs of fuel or its actual cost of fuel;

h.  The failure to disclose that Sysco's actual cost of fuel is not a factor in Sysco's Fuel Surcharge calculation;

i.  Sysco's failure to disclose to its customers that it is recovering for the same alleged cost twice, i.e. once in the actual rate and then again in the actual surcharge;

> j.   Additional deceptive practices as set out in this Class Action Complaint.

29.   Sysco's misrepresentations, omissions, and deceptive practices as set out herein are likely to mislead reasonable consumers under the circumstances.

30.   Sysco's actions or inactions directed toward Plaintiff and putative class members are also unfair.  Such actions or inactions include:

> a.   Charging Plaintiff and putative class members for the same alleged costs twice, i.e. "double dipping";
>
> b.   Charging excessive amounts for the Fuel Surcharge;
>
> c.   Charging a Fuel Surcharge which bears no relation to Sysco's actual or increased costs;
>
> d.   Charging a Fuel Surcharge which does not include Sysco's actual costs in the calculation of the amount the Fuel Surcharge;
>
> e.   Charging Plaintiff and putative class members a Fuel Charge when Sysco's actual fuel costs decrease.
>
> f.   Charging Plaintiff and putative class a Fuel Surcharge when the Fuel Surcharge are waived for other Florida customers.

31.   As a result of the deceptive and unfair practices described above, Plaintiff and each putative class member paid the improper Fuel Surcharges to their detriment.

<u>**SECOND CAUSE OF ACTION**</u>

**UNJUST ENRICHMENT**

32.   All allegations and paragraphs in this complaint are incorporated by reference.

33.   To the extent necessary, this count is pled in the alternative to the previous counts.

34.   Sysco received money from Plaintiff and each member of the putative class through

the charging of Fuel Surcharges that are fraudulent, deceptive, unfair, and unrelated to Sysco's actual or increased costs.  The benefit conferred by Plaintiff and each member of the putative class was non-gratuitous and Sysco realized value from this benefit.  It would be inequitable for Sysco to retain this benefit.

### PRAYER FOR RELIEF

35.     Plaintiff, on behalf of itself and each member of the putative class, demands all remedies and damages available to it, including repayment of all Fuel Surcharges, a declaration that the practices describe above are deceptive or unfair trade practices under the Florida Deceptive and Unfair Trade Practices Act, restitution, interest, and the attorneys' fees and costs incurred in bringing this action.

**Plaintiff requests a trial by jury.**

Dated: February 9, 2017.

Respectfully submitted,

By: */s Ryan B. Hobbs*
Ryan B. Hobbs, Esq.
Florida Bar No.: 0044179
**Brooks, LeBoeuf, Bennett, Foster & Gwartney, PA**
909 East Park Avenue
Tallahassee, Florida 32301
T: 850-222-2000
F: 850-222-9757
Primary Email: rhobbs@tallahasseeattorneys.com
Secondary Email: jeanetta@tallahasseeattorneys.com

*Attorneys for Plaintiff*

11

**IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA
CIVIL DIVISION**

**BARNACLE BILL'S OYSTER
BAR AND SEAFOOD
RESTAURANT, INC.,**

**CASE NO.:** ___2017 CA 000303___

**DIVISION:** _____

  **Plaintiff,**

**v.**

**SYSCO CORPORATION,**                                **CLASS REPRESENTATION**

  **Defendant.**
_____/

**S U M M O N S**

THE STATE OF FLORIDA:

To all and singular the sheriffs of said state:

YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint in the above-styled cause upon the Defendant:

> Corporation Service Company
> 1201 Hays Street
> Tallahassee, FL 32301-2525

Defendant is hereby required to serve written defenses to said Complaint on Plaintiff's attorney, whose address is Brooks, LeBoeuf, Bennett, Foster & Gwartney P.A., 909 East Park Avenue, Tallahassee, Florida 32301, within twenty days after service of this Summons upon you, exclusive of the day of service, and to file the original of said written defenses with the clerk of said Court either before service on Plaintiff's attorney or immediately thereafter. If you fail to do so, a default will be entered against you for the relief demanded in the Complaint.

WITNESS MY HAND AND SEAL of said Court on the _2/9/2017_ day of February, 2017, in Leon County, Florida.



GWEN MARSHALL
As Clerk of said Circuit Court

By_Yolanda Smith_____
  Deputy Clerk

Filing # 52543771 E-Filed 02/15/2017 03:02:20 PM

**IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT**
**IN AND FOR LEON COUNTY, FLORIDA**
**CIVIL DIVISION**

**BARNACLE BILL'S OYSTER**
**BAR AND SEAFOOD**
**RESTAURANT, INC.,**                         **CASE NO.: 2017-CA-000303**

    **Plaintiff,**

v.

**SYSCO CORPORATION,**            **CLASS REPRESENTATION**

    **Defendant.**

_____/

**PLAINTIFF'S NOTICE OF FILING RETURN OF SERVICE**

Plaintiff, Barnacle Bill's Oyster Bar and Seafood Restaurant, Inc., files this Notice of Filing

Return of Service of Process on Defendant, Sysco Corporation, verifying that service of process

on defendant was effectuated on February 14, 2017.

Respectfully submitted this 15th day of February, 2017.

                           **BROOKS, LEBOEUF, BENNETT,**
                             **FOSTER & GWARTNEY, P.A.**

                    _/s/ Ryan B. Hobbs_
                    Ryan B. Hobbs, Esq.
                    Fla. Bar No. 44179
                    909 East Park Avenue
                    Tallahassee, Florida 32301
                    (850) 222-2000
                    (850) 222-9757 (fax)
                    Primary E-Mail: rhobbs@tallahasseesttorneys.com
                    Secondary E-Mail:
                    jeanetta@tallahasseeattorneys.com

                    _Attorneys for Plaintiff_

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was sent on this 15th day of February, 2017, via U.S. Mail to:

Corporation Service Company
1201 Hays Street
Tallahassee, FL 32301-2525

/s/ *Ryan B. Hobbs*
Ryan B. Hobbs

2

# RETURN OF SERVICE

**State of Florida**                    **County of Leon**                    **Circuit Court**

Case Number: 2017 CA 000303

Plaintiff:
**BARNACLE BILL'S OYSTER BAR AND SEAFOOD RESTAURANT, INC.,**

vs.

Defendant:
**SYSCO CORPORATION**

For:
Brooks LeBoeuf Bennett Foster & Gwartney, P.A.
C/O Ryan B. Hobbs, Esq.
909 East Park Avenue
Tallahassee, FL 32301

Received by GPI Agency on the 13th day of February, 2017 at 3:22 pm to be served on **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301-2525**.

I, Beau Webster, Webster Investigative Services, do hereby affirm that on the **14th day of February, 2017** at **11:45 am, I:**

served a **CORPORATION** by delivering a true copy of the **Summons and Complaint** with the date and hour of service endorsed thereon by me, to: **Sara Lea** as **Clerk** for **Corporation Service Company**, at the address of: **1201 Hays Street, Tallahassee, FL 32301-2525**, and informed said person of the contents therein, in compliance with state statutes.

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served. Under penalty of perjury I declare I have read the foregoing documents and that the facts stated therein are true. Notary not required pursuant to Florida Statute 92.525 Sec (2).

**Beau Webster, Webster Investigative Services**
Process Server

**GPI Agency**
**241-A E. 6th Ave.**
**Tallahassee, FL 32303**
**(850) 765-2503**

Our Job Serial Number: GPI-2017000131

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.5n

# COMPOSITE EXHIBIT "B"

## Declaration of Gregory Lee, CFO, Sysco Jacksonville, Inc.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

BARNACLE BILL'S OYSTER
BAR AND SEAFOOD
RESTAURANT, INC.,

        **Plaintiff,**

        **v.**

SYSCO CORPORATION,

        **Defendant.**

Civil Action No. _____

**DECLARATION OF GREGORY LEE**
**IN SUPPORT OF DEFENDANT, SYSCO CORPORATION'S**
**NOTICE OF REMOVAL**

I, Gregory Lee, declare as follows:

    1.    I am the Chief Financial Officer for Sysco Jacksonville, Inc. Sysco Jacksonville, LLC is a wholly owned by Sysco Holdings, LLC, a Delaware limited liability company with its principal place of business at the offices of Sysco Corporation in Houston, Texas. Sysco Corporation is the sole member of Sysco Holdings, LLC.

    2.    I am authorized to make this Declaration on behalf of Sysco Corporation. In providing this Declaration, Sysco Corporation denies all liability for the matters addressed in Plaintiff's Class Action Complaint, but gives this Declaration for jurisdictional purposes only.

    3.    I make this Declaration based upon my personal knowledge and based upon my review of Sysco Corporation's books and records. In my capacity as Chief Financial Officer of Sysco Jacksonville, Inc., I have access to Sysco Corporation's books and records regarding the alleged "Fuel Surcharges" to Florida customers at issue in this case, specifically including but limited to the EDW Reports for Fuel Surcharges for July 1, 2014 through the February 2017, true and correct copies of which are attached hereto as Exhibits "1" and "2". These records are kept

and maintained by Sysco Corporation in the course of its regularly conducted business activity, and it is the regular practice of Sysco Corporation to make and maintain these records. These records reflect entries that are noted in the records at or near the time the event recorded occurred, by either a person with knowledge or by a person whose duties include recording this information, which was transmitted by a person with knowledge. Sysco Corporation regularly uses and relies upon these records in the course of its business.

4.      Sysco Corporation (NYSE:SYY) is a publically traded Delaware corporation with its principal place of business at 1390 Enclave Parkway, Houston, Texas 77077.

5.      Plaintiff, Barnacle Bill's Oyster Bar and Seafood Restaurant, Inc., ("Plaintiff") filed a complaint seeking to bring a class action involving a proposed class defined as "entities who reside in Florida who paid Sysco a 'Fuel Surcharge' from four years before filing of [the] action to the date of class notice." Compl. ¶ 7.

6.      Plaintiff alleges that it is an entity with its principal place of business in Tallahassee, Leon County, Florida. Compl. ¶ 5.

7.      Sysco Corporation's books and records reflect the following six Sysco affiliates service customers in Florida, and these Sysco affiliates also do from time to time impose "Fuel Surcharges" on customers in Florida:

(i)      Sysco Jacksonville, Inc., a Delaware corporation with its principal place of business at 1501 Lewis Industrial Drive, Jacksonville, Fl 32254;

(ii)     Sysco Central Florida, Inc., a Delaware corporation with its principal place of business at 200 West Story Road, Ocoee, FL 34761;

(iii)    Sysco West Coast Florida, Inc., a Delaware corporation with its principal place of business at 3000 69th Street E., Palmetto, FL 34221;

(iv)     Sysco Southeast Florida, Inc., a Delaware corporation with its principal place of business at 1999 Martin Luther King Blvd, Rivera Beach, Fl 33404;

    (v) Sysco South Florida, Inc., a Delaware corporation with its principal place of business at 12500 Sysco Way, Medley, Fl 33178.

    (vi) Sysco Gulf Coast, Inc., a Delaware corporation with its principal place of business at 2001 West Magnolia Avenue, Geneva Al 36340.

  Each of the above-described Sysco affiliates is wholly owned by Sysco Holdings, LLC, a Delaware limited liability company with its principal place of business at the offices of Sysco Corporation in Houston, Texas. Sysco Corporation is the sole member of Sysco Holdings, LLC.

  8. The Sysco Corporation affiliate that had and has a customer relationship with Plaintiff is Sysco Gulf Coast, Inc.

  9. Based on Plaintiff's allegations, I understand that Plaintiff is challenging the alleged imposition of a "Fuel Surcharge," which Plaintiff maintains Sysco Corporation charges "to recover the increased fuel costs it incurs in delivering products to its customers." Compl. ¶ 1.

**Plaintiff's Proposed "Fuel Surcharge" Class**

  10. I recently reviewed the amount of revenues recognized by the above-described affiliates attributable to the Fuel Surcharge for a large portion of the relevant time period, which I understand to be February 2013 through February 2017. Sysco Corporation's data source did not have ready access to Fuel Surcharge information for February 2013 through June 2014, but I was able to access and run Sysco Corporation's EDW Reports for Fuel Surcharges for July 1, 2014 through February 2017, and have attached true and correct copies of these reports as **Exhibits "1" and "2"**. The business records of Sysco Corporation, specifically including but not limited to the EDW Report for Fuel Surcharges for July 1, 2014 through February 2017 attached as **Exhibit "1"** reflects the Fuel Surcharges paid to Sysco Jacksonville, Inc., Sysco Central Florida, Inc., Sysco South Florida, Inc., Sysco Southeast Florida, Inc., and Sysco West Coast Florida, Inc. by entities residing in Florida for each month from July 2014 to February 2017. *This data also includes the Fuel Surcharges paid to Sysco Gulf Coast, Inc. by customers*

*in Florida and Alabama, as Sysco Gulf Coast, Inc. services customers in both Florida and Alabama, and it was not possible to remove the Fuel Surcharges assessed to Alabama customers due to time constraints before filing the Removal Notice.* This data is kept and maintained in the ordinary course of business.   The total amount of Fuel Surcharges that include  Sysco Jacksonville, Inc., Sysco Central Florida, Inc., Sysco South Florida, Inc., Sysco Southeast Florida, Inc., Sysco West Coast Florida, and Sysco Gulf Coast, Inc. is **$16,270,077.**

11.    The business records of Sysco Corporation, specifically including but not limited to the EDW Report for Fuel Surcharges for July 1, 2014 through February 2017 attached as **Exhibit "2"**, further reflect that between July 2014 and February 2017, inclusive, the Florida customers of Sysco Jacksonville, Inc., Sysco Central Florida, Inc., Sysco South Florida, Inc., Sysco Southeast Florida, Inc., and Sysco West Coast Florida, Inc., *but excluding Sysco Gulf Coast, Inc. and its Florida and Alabama customers entirely*, paid Fuel Surcharges in the amount of **$14,228,888**. This data is kept and maintained in the ordinary course of business.  When the EDW Reports for Fuel Surcharges for July 1, 2014 through February 2017 attached as **Exhibit "1" and "2"** are compared, the difference is **Exhibit "1"** includes the amount of Fuel Surcharges paid by Florida and Alabama customers of Sysco Gulf Coast, Inc. for this same time period in the amount of **$2,041,189**,[1] while **Exhibit "2"** excludes that amount.

12.    The reports attached as **Exhibits "1" and "2"**  and the amounts referred to hereinabove do not attempt to set forth any fuel revenue derived from charges other than the one type of Fuel Surcharge challenged in the Complaint.

13.    Based on my review of and familiarity with the information described above, as well as based on my own personal knowledge and access to Sysco Corporation's business

---

[1] The amount paid in Fuel Surcharges by Florida customers has not yet been segregated from this total dollar amount.  This figure is the aggregate of Fuel Surcharges paid to Sysco Gulf Coast by both Florida and Alabama customers.

records, Sysco Jacksonville, Inc., Sysco Central Florida, Inc., Sysco South Florida, Inc., Sysco Southeast Florida, Inc., Sysco West Coast Florida, Inc. and Sysco Gulf Coast, Inc. have more than 100 Florida customers who paid a Fuel Surcharge during the period of February 2013 through February 2017.

**The Total Amount At Issue**

14.    In summary, the business records of Sysco Corporation and the above-described affiliates reflect that, during the class period, entities residing in Florida paid Sysco Jacksonville, Inc., Sysco Central Florida, Inc., Sysco West Coast Florida, Inc., Sysco Southeast Florida, Inc., and Sysco South Florida, Inc. $14,228,888 in Fuel Surcharges.  Additionally, entities residing in Florida and Alabama paid Sysco Gulf Coast, Inc. $2,041,189 in Fuel Surcharges.  These figures reflect amounts already paid for the Fuel Surcharge challenged by Plaintiff's Complaint.[2]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this  13th  day of  March, 2017.

Gregory Lee

---

[2] This figure excludes transportation revenue described by any other term, such as delivery, pickup, mileage, freight, etc., and fuel revenue associated with refueling fees paid in advance of the rental, as well as other charges associated with refueling, such as fuel delivery fees, and fuel charges for propane tank rentals and refills of propane tanks.

**EXHIBIT "1"**

| Fiscal YQMW | (Multiple Items) |
|---|---|
| SPM Analysis | True |
| Item Nbr | 6592893 |

| Net Sales Actual | Column Labels | | | | | | |
|---|---|---|---|---|---|---|---|
| Row Labels | Central Florida - Sysco | Gulf Coast - Sysco | Jacksonville - Sysco | South Florida - Sysco | Southeast Florida - Sysco | West Coast Florida - Sysco | Grand Total |
| Jul, FY2014 | $62,746 | $44,352 | $48,747 | $71,057 | $45,424 | $74,485 | $346,810 |
| Aug, FY2014 | $64,383 | $44,905 | $50,045 | $71,515 | $46,797 | $75,686 | $353,330 |
| Sep, FY2014 | $83,039 | $54,027 | $65,707 | $86,192 | $55,899 | $92,145 | $441,007 |
| Oct, FY2014 | $70,285 | $46,435 | $54,721 | $59,899 | $51,862 | $82,081 | $376,851 |
| Nov, FY2014 | $69,493 | $42,095 | $53,867 | $71,468 | $54,237 | $86,019 | $379,789 |
| Dec, FY2014 | $76,976 | $45,086 | $59,279 | $74,079 | $64,556 | $103,240 | $442,203 |
| Jan, FY2014 | $65,355 | $38,409 | $49,638 | $93,067 | $54,721 | $88,008 | $372,900 |
| Feb, FY2014 | $69,214 | $42,017 | $51,455 | $76,771 | $56,177 | $93,257 | $393,150 |
| Mar, FY2014 | $88,143 | $58,041 | $67,378 | $103,438 | $69,987 | $120,296 | $507,281 |
| Apr, FY2014 | $70,636 | $49,675 | $56,025 | $83,283 | $56,949 | $93,647 | $410,215 |
| May, FY2014 | $68,276 | $49,676 | $54,598 | $81,818 | $54,941 | $86,712 | $396,022 |
| Jun, FY2014 | $81,699 | $60,591 | $66,288 | $98,873 | $66,307 | $99,589 | $473,346 |
| Jul, FY2015 | $59,969 | $46,147 | $50,445 | $78,225 | $48,746 | $74,349 | $357,880 |
| Aug, FY2015 | $60,352 | $44,860 | $51,073 | $80,487 | $46,671 | $73,522 | $358,965 |
| Sep, FY2015 | $74,524 | $53,615 | $65,295 | $97,228 | $60,731 | $88,360 | $437,752 |
| Oct, FY2015 | $60,666 | $45,622 | $52,854 | $80,594 | $50,370 | $76,235 | $366,342 |
| Nov, FY2015 | $61,020 | $43,193 | $51,215 | $84,204 | $52,750 | $79,047 | $371,427 |
| Dec, FY2015 | $72,949 | $46,929 | $57,268 | $102,117 | $62,074 | $92,735 | $434,072 |
| Jan, FY2015 | $60,354 | $38,993 | $48,154 | $80,031 | $52,194 | $81,529 | $365,634 |
| Feb, FY2015 | $61,657 | $42,092 | $50,226 | $85,248 | $52,753 | $83,176 | $365,529 |
| Mar, FY2015 | $80,174 | $56,689 | $64,307 | $107,363 | $66,789 | $94,207 | $469,529 |
| Apr, FY2015 | $60,480 | $45,548 | $50,288 | $83,429 | $49,319 | $76,249 | $365,312 |
| May, FY2015 | $57,638 | $45,709 | $49,692 | $81,174 | $47,363 | $67,358 | $349,113 |
| Jun, FY2015 | $68,433 | $56,306 | $60,970 | $98,648 | $52,230 | $78,973 | $415,960 |
| Jul, FY2016 | $54,189 | $45,916 | $45,916 | $77,438 | $54,728 | $77,876 | $326,630 |
| Aug, FY2016 | $53,880 | $47,845 | $46,534 | $79,998 | $42,594 | $68,208 | $330,092 |
| Sep, FY2016 | $67,566 | $57,498 | $58,704 | $93,172 | $45,489 | $77,876 | $402,058 |
| Oct, FY2016 | $56,344 | $47,040 | $48,201 | $78,003 | $53,818 | $58,347 | $337,567 |
| Nov, FY2016 | $56,761 | $44,090 | $48,035 | $80,357 | $44,989 | $59,661 | $344,369 |
| Dec, FY2016 | $65,782 | $47,667 | $52,973 | $95,811 | $47,968 | $70,407 | $400,533 |
| Jan, FY2016 | $55,035 | $40,146 | $44,297 | $81,696 | $58,613 | $73,234 | $342,005 |
| Feb, FY2016 | $56,910 | $40,859 | $46,841 | $82,646 | $50,424 | $72,571 | $351,626 |
| Mar, FY2016 | $73,448 | $54,599 | $59,475 | $101,615 | $51,136 | $92,571 | $445,595 |
| Apr, FY2016 | $55,942 | $44,179 | $47,612 | $76,948 | $63,888 | $67,095 | $340,180 |
| May, FY2016 | $52,983 | $43,925 | $46,129 | $74,208 | $48,403 | $59,723 | $322,353 |
| Jun, FY2016 | $62,236 | $58,557 | $54,146 | $88,867 | $45,384 | $67,318 | $378,746 |
| Jul, FY2017 | $44,704 | $39,431 | $41,435 | $71,176 | $47,622 | $51,772 | $284,332 |
| Aug, FY2017 | $45,280 | $39,096 | $40,890 | $71,329 | $35,813 | $50,751 | $281,889 |
| Sep, FY2017 | $58,951 | $52,120 | $47,726 | $83,809 | $34,543 | $59,747 | $344,300 |
| Oct, FY2017 | $47,510 | $41,882 | $36,750 | $65,629 | $41,947 | $52,722 | $276,280 |
| Nov, FY2017 | $48,231 | $37,429 | $37,362 | $69,096 | $31,787 | $53,172 | $279,412 |
| Dec, FY2017 | $59,615 | $43,596 | $46,030 | $88,621 | $34,122 | $65,237 | $344,918 |
| Jan, FY2017 | $48,886 | $35,405 | $37,015 | $71,882 | $41,819 | $54,905 | $282,564 |
| Feb, FY2017 | $51,202 | $37,985 | $38,512 | $72,305 | $34,462 | $56,663 | $292,588 |
| Grand Total | $2,763,942 | $2,041,188 | $2,254,112 | $3,659,328 | $2,216,391 | $3,335,115 | $16,270,077 |

# EXHIBIT "2"

{26876435;1}

| Fiscal YQMW | (Multiple Items) |
|---|---|
| SPM Analysis | True |
| Item Nbr | 6592893 |

| Net Sales Actual | Column Labels | | | | | |
|---|---|---|---|---|---|---|
| Row Labels | Central Florida - Sysco | Jacksonville - Sysco | South Florida - Sysco | Southeast Florida - Sysco | West Coast Florida - Sysco | Grand Total |
| Jul, FY2014 | $62,746 | $48,747 | $71,057 | $45,424 | $74,485 | $302,458 |
| Aug, FY2014 | $64,383 | $50,045 | $71,515 | $46,797 | $75,686 | $308,425 |
| Sep, FY2014 | $83,039 | $65,707 | $86,192 | $59,899 | $92,145 | $386,980 |
| Oct, FY2014 | $70,285 | $54,721 | $71,468 | $51,862 | $82,081 | $330,416 |
| Nov, FY2014 | $69,493 | $53,867 | $74,079 | $54,237 | $86,019 | $337,694 |
| Dec, FY2014 | $76,976 | $59,279 | $93,067 | $64,556 | $103,240 | $397,117 |
| Jan, FY2014 | $65,355 | $49,638 | $76,771 | $54,721 | $88,008 | $334,492 |
| Feb, FY2014 | $69,214 | $51,455 | $80,031 | $56,177 | $93,257 | $350,133 |
| Mar, FY2014 | $88,143 | $67,378 | $103,438 | $69,987 | $120,296 | $449,240 |
| Apr, FY2014 | $70,636 | $56,025 | $83,283 | $56,949 | $93,647 | $360,540 |
| May, FY2014 | $68,276 | $54,598 | $81,818 | $54,941 | $86,712 | $346,345 |
| Jun, FY2014 | $81,699 | $66,288 | $98,873 | $66,307 | $99,589 | $412,755 |
| Jul, FY2015 | $59,969 | $50,445 | $78,225 | $48,746 | $74,349 | $311,734 |
| Aug, FY2015 | $60,352 | $51,073 | $80,487 | $48,671 | $73,522 | $314,105 |
| Sep, FY2015 | $74,524 | $65,295 | $97,228 | $60,731 | $88,360 | $386,138 |
| Oct, FY2015 | $60,666 | $52,854 | $80,594 | $50,370 | $76,235 | $320,720 |
| Nov, FY2015 | $61,020 | $51,215 | $84,204 | $52,750 | $79,047 | $328,234 |
| Dec, FY2015 | $72,949 | $57,268 | $102,117 | $62,074 | $92,735 | $387,143 |
| Jan, FY2015 | $60,354 | $48,154 | $84,412 | $52,194 | $81,529 | $326,642 |
| Feb, FY2015 | $61,657 | $50,256 | $85,248 | $52,753 | $83,176 | $333,059 |
| Mar, FY2015 | $80,174 | $64,307 | $107,363 | $66,789 | $94,207 | $412,839 |
| Apr, FY2015 | $60,480 | $50,288 | $83,429 | $49,319 | $76,249 | $319,764 |
| May, FY2015 | $57,638 | $49,692 | $81,174 | $46,693 | $68,208 | $303,404 |
| Jun, FY2015 | $68,433 | $60,970 | $98,648 | $54,728 | $77,876 | $360,654 |
| Jul, FY2016 | $54,189 | $45,916 | $77,438 | $42,594 | $59,661 | $279,798 |
| Aug, FY2016 | $53,880 | $46,534 | $79,998 | $43,489 | $58,347 | $282,248 |
| Sep, FY2016 | $67,566 | $58,704 | $93,172 | $53,818 | $71,301 | $344,560 |
| Oct, FY2016 | $56,344 | $48,201 | $78,003 | $44,989 | $62,990 | $290,527 |
| Nov, FY2016 | $56,761 | $48,035 | $80,357 | $47,968 | $67,158 | $300,279 |
| Dec, FY2016 | $65,782 | $52,973 | $95,811 | $58,613 | $79,687 | $352,866 |
| Jan, FY2016 | $55,035 | $44,297 | $81,696 | $50,424 | $70,407 | $301,859 |
| Feb, FY2016 | $56,910 | $46,841 | $82,646 | $51,136 | $73,234 | $310,767 |
| Mar, FY2016 | $73,448 | $59,475 | $101,615 | $63,888 | $92,571 | $390,996 |
| Apr, FY2016 | $55,942 | $47,612 | $76,948 | $48,403 | $67,095 | $296,001 |
| May, FY2016 | $52,983 | $46,129 | $74,208 | $45,384 | $59,723 | $278,427 |
| Jun, FY2016 | $62,236 | $54,146 | $88,867 | $47,622 | $67,318 | $320,189 |
| Jul, FY2017 | $44,704 | $41,435 | $71,176 | $35,813 | $51,772 | $244,900 |
| Aug, FY2017 | $45,280 | $40,890 | $71,329 | $34,543 | $50,751 | $242,793 |
| Sep, FY2017 | $58,951 | $47,726 | $83,809 | $41,947 | $59,747 | $292,179 |
| Oct, FY2017 | $47,510 | $36,750 | $65,629 | $31,787 | $52,722 | $234,398 |
| Nov, FY2017 | $48,231 | $37,362 | $69,096 | $34,122 | $53,172 | $241,983 |
| Dec, FY2017 | $59,615 | $46,030 | $88,621 | $34,819 | $65,237 | $301,322 |
| Jan, FY2017 | $48,896 | $37,015 | $41,882 | $34,462 | $54,905 | $247,159 |
| Feb, FY2017 | $51,222 | $38,512 | $72,305 | $35,901 | $56,663 | $254,603 |
| Grand Total | $2,763,942 | $2,254,112 | $3,659,328 | $2,216,391 | $3,335,115 | $14,228,888 |